UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FANNIE MAE, a/k/a FEDERAL NATIONAL
MORTGAGE ASSOCIATION,

    Plaintiff and Counter-Defendant,

v.

RAYMOND MANDRY AND KIMBERLY
MANDRY ,

    Defendants and Counter-Plaintiffs,

and

FEDERAL HOUSING FINANCE AGENCY
and BANK OF AMERICA, N.A.,

    Third-Party Defendants.
                                       /

Case No. 12-13236

Honorable Nancy G. Edmunds

**OPINION AND ORDER (1) GRANTING COUNTER-DEFENDANT FANNIE MAE'S AND THIRD-PARTY DEFENDANT BANK OF AMERICA'S MOTION TO DISMISS COUNTER-COMPLAINT AND THIRD PARTY COMPLAINT [7] AND (2) GRANTING THIRD-PARTY DEFENDANT FEDERAL HOUSING FINANCE AGENCY'S MOTION TO DISMISS COUNTER-COMPLAINT AND THIRD-PARTY COMPLAINT [6]**

This foreclosure-related litigation involves residential property located at 7044 Camelot Drive, Canton, Michigan ("Camelot Property"). It comes before the Court on two motions, brought pursuant to Federal Rule of Civil Procedure § 12(b)(6), seeking to dismiss the claims asserted in a Counter-Complaint and Third-Party Complaint filed by Raymond and Kimberly Mandry (hereinafter "the Mandrys") on July 2, 2012 in response to Fannie Mae's action filed in Michigan's 35th District Court in Plymouth against the Mandrys (and all other occupants of the Camelot Property) seeking to recover possession of the Camelot

Property.[1]  The Mandrys had defaulted on a mortgage loan used to finance their purchase of the Camelot Property, the property was sold at a Sheriff's Sale held on December 7, 2011, and the six-month statutory redemption period expired on June 7, 2012.

For the reasons stated more fully below, Third-Party Defendant Federal Housing Finance Agency ("FHFA")'s motion to dismiss [6] is GRANTED, and Counter-Defendant Fannie Mae's and Third-Party Defendant Bank of America, N.A. ("BofA")'s motion to dismiss [7] is also GRANTED.

The Mandrys' Fifth Amendment claims asserted against FHFA and Fannie Mae are DISMISSED because Fannie Mae and FHFA are not government actors that can be held liable for constitutional violations.  The Mandrys' remaining claims are DISMISSED because (1) they failed to exercise their right of redemption during Michigan's six-month statutory redemption period thus allowing all right, title, and interest in the Camelot Property to vest in BofA, the entity that purchased that foreclosed property at the December 7, 2011 Sheriff's Sale; (2) they cannot establish the sort of prejudice required to allow an equitable extension of the statutory redemption period; and (3) there is no private right of action under the Home Affordable Modification Program ("HAMP").

**I.   Facts**

The following facts are from the Mandrys' Counter-Complaint/Third Party Complaint (hereinafter "Complaint") and documents either attached to or referenced in and central to the claims asserted by the Mandrys.[2]

---

[1]This action was timely removed on July 23, 2012.

[2]"[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508

On October 31, 2002, the Mandrys executed a mortgage on the Camelot Property and a mortgage note in the amount of $233,600 with Quicken Loans, Inc. as lender, the Mandrys as borrowers, and the Mortgage Electronic Registration System ("MERS") as mortgagee. (*Id.*; Compl. Ex. 1, Mortg. & Note.)

On June 16, 2011, MERS assigned the mortgage to BAC Home Loans Servicing LP, and recorded the assignment on July 13, 2011. (Compl., ¶ 30; Compl. Ex. 9, Assignment.)

The Mandrys defaulted on their mortgage loan, and attempted to work out a loan modification after notice was published informing them of the right to request a meeting with the mortgage holder or mortgage servicer. (3d Pty. Defs.' Mot., Ex 2.) At the time, BofA was the mortgage loan servicer, and FNMA was the investor. (Compl., ¶¶ 11, 20-24; Compl. Ex. 2; Compl. Ex. 3, 7/11/11 ltr. from Trott & Trott; Ex. 4, 7/21/11 ltr. from Trott & Trott.)

On September 24, 2011, BofA wrote to the Mandrys and notified them that, based on its review of their financial information, their mortgage loan was not eligible for modification. (Compl. Ex. 7, 9/24/11 ltr. from BofA.)

BofA pursued foreclosure by advertisement under Mich. Comp. Laws §§ 600.3201, *et seq.* On October 12, October 19, October 26, and November 2, 2011, its counsel had notice of the November 9, 2011 sheriff's sale of the Camelot Property published in the

---

F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). "A court may also consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Id.* at 336. In addition, documents not attached to the pleadings may still be considered part of the pleadings when the "document is referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (internal quotation marks and citations omitted).

Detroit Legal News, and a similar notice was posted on the Camelot Property on October 15, 2011. (3d Pty. Defs.' Mot., Ex. 2.)

Despite BofA's September 24, 2011 letter, the Mandrys continued to pursue a loan modification from BofA. (Compl., ¶ 31; Compl. Ex. 10, Notes from Home Legal Group PLLC and 10/28/11 ltr. from BofA.)

The original Sheriff's Sale date of November 9, 2011 was postponed until December 7, 2011. (Compl., ¶ 31; Compl. Ex. 11, 12/7/11 Sheriff's Deed.)

On December 7, 2011, a Sheriff's Sale was held, and BofA, "as successor by merger to BAC Home Loans Servicing, L.P. fka Countrywide Home Loan Servicing, L.P." was the foreclosing party and purchaser of the Sheriff's Deed. (Compl., ¶ 32; Compl. Ex. 11, 12/7/11 Sheriff's Deed and Aff. of Purchaser.).

On January 9, 2012, BofA quit claimed the Camelot Property to Fannie Mae. (Compl., ¶ 33, Compl., Ex. 12, Quit Claim Deed.)

Under Michigan law, the Mandrys had six months to redeem the Camelot Property. *See* Mich. Comp. Laws § 600.3240. The six-month redemption period expired on June 7, 2012. (Compl., ¶ 33, Compl., Ex. 12, Quit Claim Deed.)

The Mandrys failed to redeem the Camelot Property within the six-month statutory redemption period, and title to that Property vested in BofA on that date. *See* Mich. Comp. Laws § 600.3236.

On June 21, 2012, Fannie Mae brought an action in Michigan's 35th District Court in Plymouth, Michigan against the Mandrys and all other occupants of the Camelot Property to recover possession of that Property. (Defs.' Removal Notice, Ex. A, Summons and Compl.)

On July 2, 2012, the Mandrys filed an Answer, Affirmative Defenses, Counter-Complaint and Third-Party Complaint seeking to void the Sheriff's Sale *ab initio*, quiet title in the Mandrys, and dismiss the pending eviction proceedings based on their claims that (1) the foreclosure was illegal because FHFA, Fannie Mae, and BofA violated §§ 600.3205c(1), 600.3205c(3), 600.3205c(5)(a), 600.3205(c)(6), and 600.3204 of Michigan's foreclosure by advertisement statute by failing to work with the Mandrys to determine whether they were qualified for a loan modification, by failing to follow the HAMP guidelines in making that determination, by failing to send them a copy of the calculations relative to their eligibility for a loan modification, by proceeding with a non-judicial foreclosure, and by proceeding with BofA's foreclosure by advertisement when there was no record chain of title reflecting BofA's ownership interest in the Camelot Property; (2) the foreclosure was illegal because FHFA, Fannie Mae, and BofA violated the federal Home Affordable Modification Program ("HAMP") developed pursuant to the Emergency Economic Stabilization Act, 12 U.S.C. § 5219, by failing to suspend foreclosure proceedings while evaluating whether the Mandrys qualified for a loan modification; and (3) Fannie Mae and FIFA were government actors that violated the Mandrys' Fifth Amendment rights when they deprived them of their property without due process.

On July 23, 2012, FHFA removed the action to this Court, and this matter is now before the Court on FHFA's, BofA's, and Fannie Mae's motions to dismiss.

**II.   Standard of Review**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states

a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 679 (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted). Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* In sum, "[t]o survive a motion to dismiss,

6

a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 678 (internal quotation marks and citation omitted).

### III.  Analysis

#### A.  Fifth Amendment Due Process Claims

This Court dismisses the Mandrys' Fifth Amendment claims asserted against Fannie Mae and FHFA. It is well-established that constitutional claims cannot be maintained absent state action. *See Rubin v. Fannie Mae*, No. 12-cv-12832, 2012 WL 6000572, at * 2 (E.D. Mich. Nov. 30, 2012) (citing *Northrip v. Fed. Nat'l Mortg. Ass'n*, 527 F.2d 23, 25 (6th Cir. 1975)). There was no state action here.

Plaintiffs argue that, by virtue of FHFA's conservatorship, Fannie Mae is a government actor that can be held liable for constitutional violations. (Compl., ¶ 85; Resp. to FHFA Mot. at 1.) This Court disagrees and follows the rationale and result reached by the federal courts addressing similar claims, applying the Supreme Court's decision in *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995), and holding that Fannie Mae, and similar entity Freddie Mac, are not governmental actors post-conservatorship. Just as in these other cases, the Mandrys' claims alleging a constitutional violation are dismissed. *See Herron v. Fannie Mae*, 857 F. Supp. 2d 87, 95-96 (D. D.C. 2012); *Lopez v. Bank of America, N.A.*, No. 1:12-CV-667, 2013 WL 150460 at *2-3 (W.D. Mich. Jan. 14, 2013); *Kapla v. FNMA (In re Kapla)*, No. 11-68878, 2012 WL 6569739, at *8-16 (Bankr. E.D. Mich. Dec. 14, 2012); *Rubin v. Fannie Mae*, No. 12-cv-12832, 2012 WL 6000572, at *2-3 (E.D. Mich. Nov. 30, 2012); *Syriani v. Freddie Mac Multiclass Certificates, Series 3365*, No. CV 12-3035-JFW, 2012 WL 6200251, at *4 (C.D. Cal. July 10, 2012).

Fannie Mae operates in the secondary mortgage market, purchasing residential mortgages and "thereby providing mortgage lenders with capital to fund additional mortgage loans." *Herron*, 857 F. Supp. 2d at 89-90. In 1968, Congress privatized Fannie Mae by partitioning the Federal National Mortgage Association as it then existed into one entity that would "remain in the Government" (the Government National Mortgage Association, which is not a party to this case and had no involvement in the facts and circumstances alleged), and a separate, second entity that would become a "private corporation" -- Fannie Mae. *See* 12 U.S.C. § 1716b.

In Mid-2008, Congress empowered FHFA to act as conservator or receiver of Fannie Mae in certain circumstances for purposes of "reorganizing, rehabilitating, or winding up [its] affairs." 12 U.S.C. § 4617(a)(2). On September 6, 2008, FHFA's Director placed Fannie Mae (and Freddie Mac) into conservatorship.

The Mandrys, similar to the plaintiffs in *Herron*, *Lopez*, *Rubin*, *In re Kapla*, and *Syriani*, argue here that because FHFA, a federal agency, became Fannie Mae's conservator in 2008, the case law holding that it is not a state actor is no longer relevant." *Syriani*, 2012 WL 6200251 at *4. This argument has been soundly and consistently rejected.

> [T]he Federal Housing Finance Agency, as conservator for Freddie Mac, "step[ed] into the shoes" of Freddie Mac, much like a bankruptcy trustee. *See* 12 U.S.C. § 4617(b)(2)(A)(1) (FHFA Conservator, immediately upon the inception of conservatorship, succeeds to "all rights, titles, powers, and privileges of the regulated entity, and of any stockholder, officer, or director"); *Herron v. Fannie Mae*, 857 F. Supp. 2d 87, 2012 WL 1476051 (D. D.C. Apr. 30, 2012) ("Thus, like FDIC when it serves as conservator or receiver of a private party, <u>FHFA when it serves as conservator 'step[s] into the shoes' of the private corporation, Fannie Mae</u>."); *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86-87, 114 S. Ct. 2048, 129 L. Ed. 2d 67 (1994) (under a materially identical statute, "the FDIC as receiver 'steps into the shoes' of the [pre-existing institution], obtaining the rights 'of th[e] institution' that existed prior to receivership."); *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 144 (D. DC. 2011); *United States v.*

8

> *Beszborn*, 21 F.3d 62, 68 (5th Cir. 1994). Therefore, Freddie Mac does not become a governmental actor for Fifth Amendment purposes merely because it is placed into conservatorship. The Federal Housing Finance Agency's "control" is merely the same control that Freddie Mac had before the conservatorship. <u>As the Court in *Herron* succinctly concluded, "Fannie Mae was not converted into a government entity when it was placed into conservatorship; instead, FHFA stepped into the shoes of Fannie Mae. FHFA as conservator for Fannie Mae is not a government actor." *Herron*, 2012 WL 1476051 at \*6</u>. In addition, the temporary nature of the Federal Housing Finance Agency's conservatorship of Freddie Mac also supports the conclusion that Freddie Mac has not been transformed into a governmental actor. *Herron*, 2012 WL 1476051, at \*7 (holding that <u>because the Federal Housing Finance Agency's conservatorship "is by nature temporary, the government has not acceded to permanent control over the entity and Fannie Mae remains a private corporation"</u>).

*Syriani*, 2012 WL 6200251 at \*4 (emphasis added). *See also In re Kapla*, 2012 WL 6569739 at \*16 (concluding that "under the *Lebron* test, Fannie Mae is not a government actor, and did not become a government actor when FHFA was appointed as conservator."); *Rubin*, 2012 WL 60000572 at \*3 (finding that "Fannie Mae is not a federal actor" and dismissing the plaintiff's "constitutional claims."); *Herron*, 857 F. Supp. 2d at 95 (observing that "[a]lthough the duration of the conservatorship is indefinite, FHFA's control over Fannie Mae is temporary."); *Lopez*, 2013 WL 150460 at \*3 (concluding that "[b]ecause Fannie Mae is not under permanent governmental control, it is not a governmental actor for purposes of constitutional challenges."). The decisions the Mandrys rely on for a contrary result do not address the issue presented here -- whether Fannie Mae and FHFA are state actors that can be held liable for alleged constitutional violations.

This Court concludes, consistent with the other federal courts that have addressed the issue presented here, that FHFA's conservatorship of Fannie Mae does not and cannot transform that private corporation into a government actor under the *Lebron* test because FHFA, as conservator, merely "steps into the shoes" of Fannie Mae, a private corporation.

9

Moreover, consistent with the decisions discussed above, this Court concludes that the FHFA's conservatorship does not create the type of permanent control required under *Lebron*. Accordingly, this Court holds that Fannie Mae and FHFA are not government actors that can be held liable for the Fifth Amendment due process violation the Mandrys allege and thus grants FHFA's and Fannie Mae's motions on this claim.

The Court now considers the Mandrys' arguments that, because BofA violated provisions of Michigan's foreclosure by advertisement statute, the foreclosure sale of the Camelot Property is void *ab initio* and they are entitled to have title to that Property quieted in their name.

### B. Effect of The Mandrys' Failure to Redeem Within Six-Month Statutory Redemption Period

It is undisputed that the Mandrys failed to exercise their statutory right to redeem the foreclosed Camelot Property before the six-month statutory redemption period expired. As the Sixth Circuit and Michigan Supreme Court recently observed, this fact has significant consequences.

"[U]nder Michigan's foreclosure statute, 'all the right, title and interest which the mortgagor had at the time of the execution of the mortgage' vests in the entity that purchased the foreclosed property in the sheriff's sale after the expiration of the redemption period." *El-Seblani v. IndyMac Mortg. Servs.*, No. 12-1046, 2013 WL 69226, *3 (6th Cir. Jan. 7, 2013) (quoting Mich. Comp. Laws § 600.3236 and citing *Piotrowski v. State Land Office Bd.*, 4 N.W.2d 514, 517 (Mich. 1942), as support). "A strict reading of the statute suggests that once the redemption period expires, the homeowner has no legal interest in the property that litigation might vindicate." *Id.*

Michigan courts do, however, "allow 'an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice' in order to keep a plaintiff's suit viable, provided he makes 'a clear showing of fraud, or irregularity' by the defendant." *Id.* (quoting *Schulthies v. Barron*, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969)). "The misconduct must relate to the foreclosure procedure itself." *Id.* "Moreover, because the foreclosure statutes are intended to create finality and certainty in property rights, an action challenging foreclosure must be brought 'promptly and without delay.'" *Id.* (quoting *Richard v. Schneiderman & Sherman, PC*, 818 N.W.2d 334, 337 (Mich. Ct. App. 2011), *rev'd on other grounds*, 807 N.W.2d 325 (Mich. 2012)).

The Mandrys do not allege fraud. They do allege irregularities, i.e., that BofA violated several of Michigan's foreclosure by advertisement statutory requirements and also violated the federal Home Affordable Modification Program or HAMP. As a result of these irregularities in the foreclosure proceedings, the Mandrys claim that they are entitled to have the foreclosure sale of the Camelot Property declared void *ab initio*, and to have title to the Property quieted in their name. The Court now considers these claims.

### C. Equitable Extension of Statutory Redemption Period Not Warranted

This Court rejects the Mandrys argument that, because of the statutory violations that they allege BofA committed, the foreclosure sale of the Camelot Property should be declared void *ab initio*. A very recent Michigan Supreme Court decision held, contrary to an earlier Sixth Circuit decision, that under Michigan law a failure to comply with the requirements of Michigan's foreclosure by advertisement statute renders the foreclosure voidable, not void *ab initio*. *See Kim v. JPMorgan Chase Bank, N.A.*, ___ N.W.2d ___,

2012 WL 6858059, *5-6 (Mich. Dec. 21, 2012) (reviewing *Davenport v. HSBC Bank USA*, 739 N.W.2d 383, 384 (Mich. Ct. App. 2007), the decision the Sixth Circuit relied upon for its contrary holding in *Mitan v. Fed. Home Loan Mortg. Corp.*, ___ F.3d ___, 2012 WL 6200257 (6th Cir. Dec. 12, 2012), and holding that "*Davenport*'s holding was contrary to the established precedent of [the Michigan Supreme] Court."). Thus, under controlling Michigan law, the foreclosure sale cannot be declared void *ab initio*. *See Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (observing that federal courts must follow the decisions of the state's highest court when applying state law). So, the issue this Court must now address is whether, under Michigan law, the foreclosure sale on the Camelot Property is voidable, or could be set aside, on the facts alleged.

The Michigan Supreme Court's recent decision in *Kim* instructs on this issue as well. "[T]o set aside the foreclosure sale, plaintiffs must show that they were prejudiced by defendant's failure to comply with [Michigan's foreclosure by advertisement statute]." *Id.* at *6. "To demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Id.* The Concurring Opinion by Justice Markman provides further guidance "concerning the nature of the 'prejudice' that plaintiffs must demonstrate in order to set aside the foreclosure;" and, in that regard, provides a nonexhaustive list of factors to be considered. *Id.* at *9. These include: (1) "whether plaintiffs were misled into believing that no sale had been had;" (2) "whether plaintiffs act[ed] promptly after [becoming] aware of the facts on which they based their complaint;" (3) "whether plaintiffs made an effort to redeem the property during the redemption period;" (4) "whether plaintiffs were represented by counsel throughout the foreclosure process;" and (5) "whether

12

defendant relied on the apparent validity of the sale by taking steps to protect its interest in the subject property." *Id.* (Markman, J. concurring) (internal quotation marks and citations omitted).

Applying *Kim*, this Court concludes that the Mandrys cannot establish the prejudice required to set aside the foreclosure sale of the Camelot Property. Even assuming that their allegations of noncompliance with Mich. Comp. Laws § 600.3205c are true under the Rule 12(b)(6) standard, the Mandrys cannot demonstrate "that they would have been in a better position to preserve their interest in the property" absent BofA's alleged noncompliance. *See Kim*, 2012 WL 6858059 at *6. First, the Mandrys have not and cannot establish that they were misled into believing that no Sheriff's Sale took place, i.e., they acknowledge that they knew the original November 9, 2011 date for the Sheriff's Sale was postponed to December 7, 2011 and knew that the Sheriff's Sale took place on December 7, 2011. (Compl., ¶ 31; Compl. Ex. 10, notes from Home Legal Group PLLC.) Second, although they were not represented by counsel throughout the foreclosure process, the Mandrys acknowledge assistance in that process by individuals associated with the Wayne County Mortgage Foreclosure Program (Compl., ¶ 22) and Home Legal Group PLLC (Compl., ¶ 31; Compl. Ex. 10, notes from Home Legal Group PLLC). Third and more importantly, the Mandrys cannot dispute that they allowed Michigan's statutory redemption period to expire on June 7, 2012 without attempting to exercise their right to redeem. Similarly, they cannot dispute that, despite knowledge of facts underlying their claims that they qualified for a loan modification and that BofA wrongfully denied them that modification and violated Michigan's foreclosure by advertisement statute, they made no effort to take advantage of the statutory remedy available to borrowers like them by "fil[ing]

an action . . . to convert the foreclosure proceeding to a judicial foreclosure." Mich. Comp. Laws § 600.3205c(8).

Fourth, the Mandrys cannot establish their claim that BofA violated § 600.3204(3) by failing to record an assignment of their mortgage to BofA before foreclosing. As the *Kim* Court recognized, the recording requirement does not apply "where the title is transferred by operation of law." *Kim*, 2012 WL 6858059 at *4 (quoting *Miller v. Clark*, 56 Mich 337, 340-41, 23 N.W. 35 (Mich. 1885). The *Kim* Court also recognized that a merger is "a transaction by operation of law under traditional banking and corporate law." *Id.* at *6. Quoting Mich. Comp. Laws § 450.1724(1)(b), it observed that "[w]hen a merger takes effect, . . . the title to all real estate and other property and rights owned by each corporation party to the merger are vested in the surviving corporation without reversion or impairment." *Id.* at *5 n.23. *See also* Mich. Comp. Laws § 450.1736(9)(b) (same). Despite the Mandrys' allegation that BAC Home Loans Servicing LP was the foreclosing party, the exhibits attached to their Complaint show otherwise; BofA was the servicer and foreclosing party. (Compl. Exs. 2 and 11.) As reflected in the Sheriff's Deed, BofA was identified as "successor by merger to BAC Home Loans Servicing, L.P." (Compl. Ex. 11.) Accordingly, as recently recognized by the Michigan Supreme Court in *Kim*, because BofA obtained the Mandrys' mortgage by operation of law, it is exempt from the recording requirement of Mich. Comp. Law § 600.3204(3). "Michigan law has long recognized that a mortgage obtained by operation of law need not be recorded before foreclosure is allowed because the successor mortgagee steps into the shoes of the original mortgagee." *Id.* at *9 (Zahra, J., dissenting on other grounds) (citing *Miller*, 56 Mich. at 340-41).

14

Finally, for all the reasons addressed above, the Mandrys cannot establish prejudice based on a claimed violation of HAMP and thus cannot establish that they are entitled to an equitable extension of the statutory six-month redemption period. Accordingly, the Mandrys' claims of illegal foreclosure based on violations of Michigan's foreclosure by advertisement statute and HAMP and their quiet title claim are dismissed.

Moreover, because there is no private right of action under HAMP, the Mandrys cannot state a claim for relief based on an alleged violation of HAMP, and thus the Mandrys' violation of HAMP claim is also dismissed. *See Hart v. Countrywide Home Loans, Inc.*, 735 F. Supp. 2d 741, 748 (E.D. Mich. 2010) (recognizing that there is no implied or express private right to sue under HAMP and citing cases). *See also Yunanova v. BAC Home Loans Serv., LP*, No. 2:10-cv-14156, 2012 WL 441161, *6 (E.D. Mich. Feb. 10, 2012) (rejecting a claim that the defendant violated HAMP, citing cases, and holding that "[t]his claim fails because, as widely held by Michigan and federal courts, there is no private right of action under HAMP.").

## IV. Conclusion

For the above-stated reasons, this Court GRANTS Third-Party Defendant Federal Housing Finance Agency ("FHFA")'s motion to dismiss [6], GRANTS Counter-Defendant Fannie Mae's and Third-Party Defendant Bank of America, N.A. ("BofA")'s motion to dismiss [7], and DISMISSES all the claims asserted in the Mandrys' Counter-Complaint and Third-Party Complaint.

        s/Nancy G. Edmunds  
        Nancy G. Edmunds  
        United States District Judge

Dated: February 26, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 26, 2013, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager